```
               UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

<u>Mashud Yoda</u>

    v.                                                       Case No. 21-cv-1035-SE
                                                              Opinion No. 2022 DNH 132

<u>Warden, FCI Berlin</u>

## O R D E R

Mashud Yoda, proceeding pro se, filed a petition under 28 U.S.C. § 2241, challenging disciplinary proceedings that resulted in his loss of good time credits and other sanctions. The warden moves for summary judgment on Yoda's claims. Doc. no. 9. Yoda did not file a response to the motion for summary judgment.

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "carries with it the potential to affect the outcome of the suit." French v. Merrill, 15 F.4th 116, 123 (1st Cir. 2021) (quotation omitted). A material fact is in genuine dispute if "a reasonable jury could resolve the point in the favor of the non-moving party." Id. The court construes the record in the light most favorable to the nonmoving party. Benson v. Wal-Mart Stores East, L.P., 14 F.4th

13, 17 (1st Cir. 2021). In considering a motion for summary judgment, the court may review materials cited in the motion and other materials in the record. Fed. R. Civ. P. 56(c)(1)(3).

Background

Yoda is a prisoner at the Federal Correctional Institution in Berlin, New Hampshire. On November 8, 2020, a Bureau of Prisons ("BOP") officer found a photograph that had been posted on Instagram several days earlier. It featured Yoda's cellmate posing in their cell. The following day, the BOP searched Instagram and found an account identified as "papaola" that appeared to belong to Yoda. The account's postings included a photograph of Yoda in his cell that had been posted on approximately November 6, 2020.

The Special Investigative Service Department ("SIS") began an investigation to determine whether Yoda had violated BOP rules. As part of the investigation, Yoda and his cellmate were moved to the special housing unit so that officers could photograph their cell, which was shown in the photographs found on Instagram.

Based on the results of the investigation, an SIS officer filed an incident report (No. 3454246) on December 1, 2020. The incident report charged Yoda with unauthorized contact with the public in violation of Offense Code 327 and conduct that

disrupts or interferes with the security or orderly running of the institution by possessing a hazardous tool, a cellphone, in violation of Offense Code 199. The incident report listed the incident date as November 9, 2020.

On December 30, 2020, several days before Yoda's hearing in front of a Disciplinary Hearing Officer ("DHO"), the BOP revised Yoda's incident report. Specifically, the revised report changed the date of the incident from November 9, 2020, to November 5, 2020. The BOP made the change to show the date on which the photograph was posted to Instagram rather than the date on which the BOP discovered the photograph. In addition, the revised report included additional details about Yoda's conduct. It compared Yoda's appearance in the Instagram post to his appearance when he was placed in the special housing unit and compared the specific identifiers of Yoda's cell in the SIS photographs to those in the cell featured in the Instagram post. The revised report concluded that the photographs were taken within a few days of each other. Yoda received a copy of the rewritten report on December 30, 2020, and prison officials advised him of his rights.

The DHO held a hearing on Incident Report No. 3454246 on January 5, 2021. Yoda denied the charges, asserting that he did not take the photograph or post it on Instagram in November. He stated that the Instagram photograph was not taken recently and

3

was instead taken with an old cellphone that prison officials had found in his cell back in March 2020.[1] Yoda also stated that neither his hairstyle nor the details of his cell had changed since March. He requested a forensic examination of the cellphone the BOP had confiscated in March 2020. The DHO granted Yoda's request.

The DHO reconvened the hearing on February 4, 2021, after receiving the forensic analysis. The DHO informed Yoda that the forensic report indicated that no photographs were found on the old cellphone. Yoda continued to argue that the photograph was taken with the old cellphone.

The DHO found that Yoda had committed the prohibited acts charged: unauthorized contact with the public and conduct that disrupts or interferes with the security or orderly running of the institution by possessing a hazardous tool, a cellphone, in violation of Offense Codes 327 and 199. That decision was based on the SIS officer's written report of the incident, a supporting memorandum submitted by the officer who assisted in the investigation, the Instagram post, the SIS photographs taken of Yoda's cell, Yoda's statements, the forensic report, and

---

[1] In March 2020, the BOP charged Yoda with possession of a hazardous tool, a cellphone. The BOP dropped the charge against Yoda when his cellmate took responsibility for the phone and said Yoda was not involved. The incident report against Yoda for that offense was expunged.

other evidence. The DHO imposed sanctions of the loss of 41 days of good conduct time, loss of visiting privileges for a year, and loss of email privileges for two months.

Yoda appealed the DHO's decision in accordance with the BOP's administrative appeals process. His appeals were denied.

Yoda then filed his petition in this court. He alleges that his due process rights were violated when the date of the incident in the report was changed from November 9, 2020, to November 5, 2020, and because the DHO's decision is against the weight of the evidence. On preliminary review, the court found that Yoda's petition challenged the DHO's finding based on alleged violations of his Fifth Amendment due process rights.

## Discussion

The warden moves for summary judgment on the grounds that the procedures used in Yoda's disciplinary proceeding did not violate Yoda's due process rights and that the DHO's decision was based on the required amount of evidence. As is noted above, Yoda did not respond to the motion.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The court assumes without deciding that prisoners retain a liberty interest in good conduct time ("GCT")

5

and that 28 U.S.C. § 2241 remains a proper vehicle by which to challenge disciplinary proceedings resulting in the loss of GCT. See, e.g., Francis v. Maloney, 798 F.3d 33, 36-37 (1st Cir. 2015) (discussing how Pepper v. United States, 562 U.S. 476, 501 n.14 (2011) may call into question whether a prisoner can bring a habeas claim for relief associated with lost GCT because Pepper states in dicta that GCT "does not affect the length of a court-imposed sentence; rather, it is an administrative reward" to incentivize compliance with prison disciplinary regulations); cf. Wolff, 418 U.S. at 557 (concluding prisoners have a liberty interest in GCT because there is a statutory right to "a shortened prison sentence through the accumulation of credits for good behavior").

Proceeding under that assumption, if a prison disciplinary hearing may result in the loss of GCT, a prisoner is entitled to: (1) written notice of the disciplinary charges at least 24 hours in advance of the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; (3) an impartial factfinder; and (4) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action. Id. at 563-67. Further, due process requires that the disciplinary decision to revoke GCT be supported by "some evidence." See Superintendent, Massachusetts

6

Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454, 455-56 (1985) (explaining the "some-evidence" inquiry requires the court to determine "whether there is any evidence in the record that could support the [DHO's] conclusion").

I. Change in Date of Incident

Yoda alleges in his petition that changing the date of the incident in the revised incident report from November 9, 2020, to November 5, 2020, caused two due process violations. First, he claims that the change interfered with his ability to prepare a defense. Second, he alleges that the revised report violated a BOP regulation that requires that the BOP provide prisoners with a copy of an incident report within 24 hours after the incident.[2]

A. Opportunity to Prepare a Defense

As Yoda acknowledges in his petition, he cannot establish a due process violation without showing that the claimed violation prejudiced him. See Pittman v. Fox, 766 F. App'x 705, 716 (10th Cir. 2019) (no due process violation in a prison disciplinary proceeding absent prejudice); Gross v. Warden, USP Canaan, 720 F. App'x 94, 96 (3d Cir. 2017) (same). Thus, when a prisoner

---

[2] In his petition, Yoda cites 28 C.F.R. § 541.5(a) as the pertinent regulation. The BOP also has an internal policy, Program Statement 5270.09, that addresses the same issue, and the warden refers to the Program Statement when addressing the 24-hour requirement.

7

claims a due process violation based on the amendment of an incident report, he must show that the outcome of the hearing was affected by the amendment. See Colon v. Tellez, No. 20-CV-5252 (AMD), 2022 WL 521524, at *5 (E.D.N.Y. Feb. 22, 2022).

Yoda argues that the change in the date prejudiced his ability to provide a statement in his defense, because he prepared his statement in response to the first incident report. The record, however, does not support his claim.

Yoda's defense in his statement was that he did not do the actions that were charged. He stated that he did not possess or use a cellphone and that no cellphone was found in his cell during the November search. He also stated that the posted photograph was old, was taken with the cellphone found in March, and was posted by his friends who control his Instagram account. Nothing in Yoda's statement relies on the incident date of November 9, and, therefore, the record does not show that he was prejudiced by the amendment of the date in the incident report.

Further, a prison official provided Yoda with a copy of the amended incident report on December 30, 2020. The DHO held the hearing on January 5, 2021. Yoda does not contend that he lacked time to amend his statement in response to the change of the incident date. The DHO considered Yoda's statement, and in response ordered a forensic examination of the cellphone found

8

in Yoda's cell in March. Contrary to Yoda's defense, no photographs were found on that cellphone.

Therefore, the record does not support Yoda's due process claim that the change of the incident date prejudiced his defense.

### B. Violation of BOP Regulation

Yoda also alleges that his due process rights were violated because BOP officials did not provide him with the incident report within 24 hours of becoming aware of the incident. It is true that a BOP regulation provides that a prisoner "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the prisoner's] involvement in the incident." 28 C.F.R. § 541.5(a). "Courts have consistently held, however, that this regulation, by its terms is not mandatory, and, in any event, does not create an enforceable right." Roberts v. Warden, FCI Berlin, No. 20-CV-618-SE, 2022 WL 1205515, at *4 (D.N.H. Mar. 23, 2022), report and recommendation approved, No. 20-CV-618-SE, 2022 WL 1205205 (D.N.H. Apr. 22, 2022) (quotation omitted); see Millhouse v. Warden Lewisburg USP, 785 F. App'x 931, 934 (3d Cir. 2019); Brennan v. United States, 646 F. App'x 662, 667 (10th Cir. 2016); Jacques v. Bureau of Prisons, 632 F. App'x 225, 225-26 (5th Cir. 2016).

In terms of timing in the context of prison disciplinary proceedings, due process only requires "written notice of the charges at least twenty-four hours in advance of the hearing." Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005) (citing Wolff, 418 U.S. at 564). It is undisputed that Yoda received the initial incident report on December 1, 2020, and the revised report on December 30, 2020, both of which are more than 24 hours prior to the January 5, 2021 hearing.

Therefore, the warden is entitled to summary judgment on Yoda's due process claim based on the amended incident report.

II. Sufficiency of the Evidence

The DHO's written decision in Yoda's case, issued on February 4, 2021, was supported by "some evidence" as required by due process. Doc. no. 9-4. In the decision, the DHO described the evidence upon which she relied. Id. That evidence included the report of the SIS investigation into the Instagram photograph which concluded that Yoda used a cellphone to take the photograph that was posted on Instagram, the written account submitted by the officer who found Yoda's photograph on Instagram, the photograph posted on Instagram showing Yoda in his cell, Yoda's statement, and the forensics report on the cellphone found in March. The extensive evidence upon which the DHO relied was more than sufficient to support the decision that

Yoda committed prohibited acts in violation of Offense Codes 327 and 199.

Therefore, the warden is entitled to summary judgment on Yoda's claim that the evidence was not sufficient to support the DHO's decision.

## Conclusion

For the foregoing reasons, the warden's motion for summary judgment (document no. 9) is granted. The petition is dismissed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

October 21, 2022

cc: Mashud Yoda, pro se.
    Seth R. Aframe, AUSA.